Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GERALD HILL WHITE,**<br><br>**Plaintiff,**<br><br>v.<br><br>**SCOR R. SORRELL,**<br><br>**Defendant.** | Civil Action No. 17-6524 (ES)(JSA)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Plaintiff, Gerald Hill White, an inmate at South Woods State Prison in Bridgeton, New Jersey, is proceeding *pro se* with a civil rights complaint against Defendant, Senior Corrections Officer Scor R. Sorrell pursuant to 42 U.S.C. § 1983. (D.E. No. 1 ("Complaint" or "Compl.")).[1] Before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (D.E. No. 41 & D.E. No. 41-1 ("Mov. Br.")). Having considered the parties' submissions, the Court decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); *see also* L. Civ. R. 78.1(b). For the reasons set forth below, the motion is **GRANTED**.

**I.   BACKGROUND**[2]

    **a.   Factual Background**

At all relevant times, Plaintiff was an inmate at East Jersey State Prison. (SUMF ¶ 2). At

---

[1] Unless otherwise noted, pin cites to Docket Entry numbers 1, 47 and 41-2 refer to the pagination automatically generated by the Court's electronic filing system.

[2] Plaintiff did not file a responsive statement of material facts as required by Local Rule 56.1(a), and, ordinarily, "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1(a). The Court, however, is mindful that Plaintiff is proceeding *pro se*, and courts often relax procedural rules, including Local Rule 56.1(a), for unrepresented litigants. *See, e.g.*, *Shuman v. Sabol*, No. 09-2490, 2011 WL 4343780, at *6 (D.N.J. Sept. 14, 2011). Therefore, the Court draws the relevant facts primarily from Defendant's

some point in June 2017, Plaintiff was placed in temporary closed custody based on an anonymous note alleging that Plaintiff intended to harm Defendant. (*Id.* ¶ 3). Plaintiff alleged in his Complaint that he was released into the prison's general population after two days of temporary closed custody. (Compl. at 6).

Following Plaintiff's release from closed custody, he filed a series of grievances using the electronic grievance system (the "J-PAY system") alleging that Defendant verbally abused and threatened him. (SUMF ¶ 4; D.E. No. 41-2, Ex. B to Franchetti Cert. at 41 ("Inmate Handbook")). Specifically, on June 27, 2017, Plaintiff reported that, while he and his cellmate were walking in the recreation yard, Defendant yelled out that he was going to "slap the shit out of [Plaintiff] and [his] cellmate." (SUMF ¶ 8). On June 30, 2017, Plaintiff reported that Defendant had approached him and his cellmate as they were leaving from breakfast and said "look at these two homo[]s leaving the mess hall together." (*Id.*).

In addition, Plaintiff testified that on or around June 28, 2017, he saw Defendant throw juice into his cell. (White Dep at 22:21–24:9). Further, according to the Complaint, on July 3, 2017, Defendant threatened to search Plaintiff's cell while he was out in the recreation yard, and when he returned from the yard, his cell was "trashed." (Compl. at 6). Finally, on July 25, 2017, Plaintiff reported that an unidentified inmate told him that Defendant went into Plaintiff's cell while he was in the recreation yard, and when Plaintiff returned to his cell, he saw that his bed and belongings were covered in juice. (SUMF ¶ 8).

According to Defendant, all of Plaintiff's grievances were ultimately resolved by "staff" at

---

statement of undisputed material facts, Plaintiff's deposition, as well as the Complaint. (D.E. No. 41-4 ("SUMF"); D.E. No. 57-1, Ex. 2 to Pearl Cert. ("White Dep"); Compl.). *See Jordan v. Allgroup Wheaton*, 218 F. Supp. 2d 643, 646 n.2 (D.N.J. 2002), *aff'd,* 95 F. App'x 462 (3d Cir. 2004) (drawing relevant facts from the defendant's statement of undisputed material facts and the *pro se* plaintiff's complaint where the plaintiff failed to submit a responsive statement of material facts).

East Jersey State Prison, and Plaintiff "did not appeal any of those resolutions." (*Id.* ¶ 9). Plaintiff did not file any other grievances regarding Defendant. (*Id.*).

### b. Procedural History

On August 28, 2017, Plaintiff filed his Complaint against Defendant under 42 U.S.C. § 1983 for an Eighth Amendment violation based on Defendant's alleged harassment and threats. (Compl. at 2 & 4–12; *see also* D.E. No. 4). On January 10, 2018, Defendant filed a motion to dismiss the Complaint, which the Court denied. (D.E. Nos. 9 & 13). Specifically, in the Court's March 28, 2018 Order, the Court construed the Complaint as alleging, other than verbal abuse and threats, a destructive cell search as part of a targeted campaign against Plaintiff. (D.E. No. 13 ¶ 6). The case proceeded to discovery, which closed on July 31, 2019. (D.E. Nos. 16 & 29).

On February 5, 2020, Defendant filed the instant motion for summary judgment, which Plaintiff initially did not oppose. On September 22, 2020, the Court provided the parties with notice of its intent to resolve factual issues regarding whether Plaintiff had exhausted his administrative remedies pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), and ordered that the parties submit any relevant evidence they wished the Court to consider within thirty days. (D.E. No. 42 ¶ 3). In addition, the Court gave notice to Plaintiff that it would provide him with additional time to respond to Defendant's motion given his apparent transfer to South Woods State Prison and his *pro se* status. (*Id.* at ¶ 2). On October 22, 2020, Defendant timely filed a submission in response to the Court's September 22, 2020 Order. (D.E. No. 43). And on February 5, 2021, Plaintiff filed a submission in response to the Court's September 22, 2020 Order, as well as an opposition to the instant motion. (D.E. No. 47 ("Opp.")). On May 3, 2021, Defendant filed a reply brief. (D.E. No. 51).

On November 16, 2021, the Court ordered Defendant to submit further evidence relevant

to the issue of exhaustion, particularly, evidence of the process for Plaintiff to file an administrative appeal. (D.E. No. 53). On December 28, 2021, Defendant timely filed a submission in response to the Court's November 16, 2021 Order. (D.E. No. 57). The Court is prepared to rule.

## II.     LEGAL STANDARD

A court should grant summary judgment if the evidence in the record, viewed with all reasonable inferences in favor of the nonmoving party, demonstrates that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The mere existence of an alleged disputed fact is not enough. *See id.* at 247–48. A fact is "material" if under the governing substantive law, a dispute about the fact might affect the outcome of the lawsuit. *Id.* at 248. Factual disputes that are irrelevant or unnecessary will not preclude summary judgment. *See id.*

At summary judgment, the Court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Id.* at 249. The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. To satisfy this burden, the non-moving party "may not rest upon the mere allegations or denials of his pleading," Fed. R. Civ. P. 56(e), and he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993) (internal quotation and citation omitted). The non-moving party must

go beyond the pleadings and point to specific factual evidence showing there is a genuine material issue for trial. *Celotex Corp.*, 477 U.S. at 323–24. He must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F. 3d 480, 484 (3d Cir. 1995). Speculation and conjecture will not suffice. *See Jackson v. Danberg*, 594 F.3d 210, 227 (3d. Cir. 2010).

### III.   DISCUSSION

#### A.   Exhaustion of Administrative Remedies

Defendant first contends that the Court should grant summary judgment because Plaintiff has failed to exhaust his administrative remedies. (Mov. Br. at 7–11). Specifically, Defendant submits that, although Plaintiff filed several grievances about Defendant's alleged conduct using the prison's computer-based J-Pay grievance system, he did not appeal any of the responses to those grievances. (*Id.*). Because the Court cannot determine whether the grievance appeal process was available to Plaintiff within the meaning of the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), the Court declines to grant summary judgment on the basis of exhaustion.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement includes constitutional claims, *Woodford v. Ngo*, 548 U.S. 81, 91 n.2 (2007), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion under the PLRA must be proper, meaning "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison

grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Rinaldi v. United States*, 904 F.3d 257, 272 (3d Cir. 2018) ("PLRA exhaustion turns on the remedies and grievance procedures that the particular prison has available.").

Failure to exhaust administrative remedies is an affirmative defense rather than a pleading requirement, and, as such, defendants have the burden to plead and prove that a plaintiff has failed to exhaust administrative remedies. *Jones*, 549 U.S. at 216; *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). Exhaustion has one exception: because the defense "hinges on the 'availab[ility]' of administrative remedies," the plaintiff "must exhaust available remedies, but [he] need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). For example, where an administrative remedy exists but is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it," the remedy is unavailable within the meaning of the PLRA. *Id.* at 643–44.

According to Defendant's submissions, the New Jersey Department of Corrections provides inmates with two mechanisms to assert grievances and complete the administrative review process: a paper-based, "multi-level Inmate Remedy System," and the computer-based J-PAY system. (*See* Inmate Handbook at 41). The J-PAY system "allows inmates to submit electronic grievances on the kiosk located on each housing unit." (*Id.* at 43). After an inmate submits a grievance through the J-PAY system, prison staff have thirty days to respond. (*Id.*). If an inmate believes that a response to a grievance was inadequate, the Inmate Handbook merely provides that the inmate "may appeal the response to the Administrator," and that "[d]ecisions made by the Administrator are the final level of review by the Department." (*Id.*).

Here, Plaintiff submitted several grievances using the J-PAY system. (*See* SUMF ¶ 8; *see also* D.E. No. 41-2, Ex. C to Franchetti Cert. at 46–48). Defendant argues that Plaintiff failed to

6

exhaust his administrative remedies because he did not appeal the responses to those grievances to the Administrator in accordance with the prison's grievance process. (Mov. Br. at 10–11). In response, Plaintiff argues that he sent letters "to all the places that [he] was aware of t[o] place these complaints against" Defendant and did "everything [he] was supposed to do before filing [his] final form to sue" Defendant. (Opp. at 1).

The Court is unable to resolve the exhaustion issue based on the current record because the procedures for appealing inmate grievances through the J-PAY system are unclear. Particularly, the Inmate Handbook that Defendant submits fails to explain *how* one might appeal a grievance using the J-PAY system, and Defendant has not provided specific procedures for appealing a grievance on J-PAY, nor has Defendant shown that such procedures exist. Without such information, the Court cannot determine whether the grievance appeal process was "available" to Plaintiff within the meaning of the PLRA. *See Ross*, 578 U.S. at 642. Accordingly, a genuine issue of material fact remains as to the availability of the appeal process, and the Court declines to grant summary judgment on the basis of exhaustion. *See Nance v. Danley*, No. 17-6409, 2021 WL 2592931, at *3 (D.N.J. June 23, 2021) (denying summary judgment on exhaustion grounds because Defendant did not "provide the specific instructions for filing grievances or appeals through the JPAY System"); *Hannah v. Adm'r Albert C. Wagner Youth Corr. Facility*, No. 17-8066, 2020 WL 1864575, at *4 (D.N.J. Apr. 14, 2020) (denying summary judgment on exhaustion and noting that Defendants had not "even explained how one appeals on the JPAY kiosk").

### B.     Constitutional Violation

Defendant alternatively argues that he is entitled to summary judgment because Plaintiff cannot substantiate his constitutional claim against Defendant. (Mov. Br. at 11–13). For the following reasons, the Court agrees.

The Eighth Amendment prohibits the infliction of "cruel and unusual" punishments on those convicted of crimes. *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). However, not every injury suffered by a prisoner gives rise to constitutional liability. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official violates the Eighth Amendment only when two requirements are met: (i) the deprivation alleged must be, objectively, sufficiently serious, and (ii) the prison official possesses a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component of an Eighth Amendment claim is contextual and responsive to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society, . . . only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 9.

It is well established that verbal harassment, by itself, is not sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *See Stepney v. Gilliard*, No. 02-5259, 2005 WL 3338370, at *6 (D.N.J. Dec. 8, 2005). Likewise, mere threats, even to a prisoner's life, made by a prison official do not satisfy the objective component of the Eighth Amendment. *Banks v. Beard*, No. 03-659, 2006 WL 2192015, at *10 (W.D. Pa. Aug. 1, 2006). While the Supreme Court has held that cell searches do not ordinarily rise to the level of a constitutional violation, cell searches conducted as part of a campaign of "calculated harassment" may be sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *see also Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993). "Courts must decide whether the [facts] are closer to the physical torture against which the Constitution clearly protects or the *de minimis* harms against which it does not." *McKune v. Lile*, 536 U.S. 24, 41 (2002).

In this matter, the Court has previously found that Plaintiff's allegations state a claim and, if proven, amount to a constitutional violation. (*See* D.E. Nos. 4 & 13). Specifically, in denying Defendant's motion to dismiss for failure to state a claim, the Court found that,

> [W]hile each of [the] allegations [of verbal threats and harassment, purposeful ransacking of Plaintiff's cell, and two incidents in which Defendant allegedly splashed Plaintiff's bedding and possessions with liquid] alone would not suffice to plead a cognizable claim for relief under the Eighth Amendment, when these facts are taken in the aggregate, Plaintiff has pled sufficient facts, which, if proven, could establish a plausible basis for liability to the extent they establish a calculated harassment campaign.

(D.E. No. 13 ¶ 6). The Court now considers whether Plaintiff has set forth sufficient evidence to demonstrate facts relating to the essential elements of his claim—particularly, facts demonstrating an objectively, sufficiently serious deprivation. *See Celotex Corp.*, 477 U.S. at 323–24; *see also Wilson*, 501 U.S. at 298. For the following reasons, the Court concludes that he has not.

Plaintiff sets forth facts in support of his constitutional claim that indicate Defendant threw juice into his cell or on his belongings on two occasions. For example, Plaintiff testified that he saw Defendant throw juice into his cell on or around June 28, 2017. (*See* White Dep. at 22:21–24:9). In addition, Plaintiff's July 25, 2017 grievance indicates that an unidentified inmate told him that Defendant went into Plaintiff's cell while he was in the recreation yard, and when Plaintiff returned to his cell, he saw that his bed and belongings were covered in juice. (SUMF ¶ 8). However, Plaintiff has failed to offer evidence to support the remainder of his claim, specifically, that Defendant "trashed" his cell on July 3, 2017, beyond his allegations in the Complaint. (*See* Compl. at 6). Plaintiff did not testify to any such purposeful ransacking during his deposition or mention same in any grievance he filed. Moreover, Plaintiff does not point to any evidence in the record demonstrating that any such purposeful ransacking occurred. *See Orsatti*, 71 F. 3d at 484 (noting the non-movant must "point to concrete evidence in the record that supports each and every

essential element of his case"). As such, Plaintiff has not established a calculated harassment campaign to form a basis for relief under the Eighth Amendment.[3]

Therefore, considering all of the evidence in the record, a reasonable jury could find only that Defendant verbally abused Plaintiff and threw juice into his cell or on his belongings on two occasions. Although that conduct, if true, is regrettable, Plaintiff has failed to present facts demonstrating an objectively, sufficiently serious deprivation of constitutional significance, an essential element of Plaintiff's Eighth Amendment claim. *See id.*; *see also Wilson*, 501 U.S. at 298. Accordingly, the Court will grant Defendant's motion and enter summary judgment in his favor.

## IV.   CONCLUSION

For the forgoing reasons, Defendant's motion for summary judgment is **GRANTED**. An appropriate Order follows.

Dated: May 4, 2023

*/s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[3] Defendant appears to argue that Plaintiff cannot show that Defendant searched his cell on July 25, 2017. (Mov. Br. at 13). In addition, Defendant appears to argue that the underlying statement contained in Plaintiff's July 25, 2017 grievance—namely, that an unidentified inmate told him that Defendant went into Plaintiff's cell while he was in the recreation yard—constitutes inadmissible hearsay. (*Id.*; *see also* SUMF ¶ 8). The Court does not reach either argument. Even assuming admissibility of the underlying statement, the July 25, 2017 grievance suggests, at most, that Defendant threw juice on Plaintiff's belongings on July 25, 2017. (*See* SUMF ¶ 8). Plaintiff still has not presented evidence to support his allegation that Defendant "trashed" his cell on July 3, 2017. (*See* Compl. at 6).